# UNITED STATES DISTRICT COURT

for the

Southern District of California



FILED

JAN 1 7 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Black Samsung Cellular Telephone
SIM CARD #: TM9263

)
)
)
)
)
)

Case No.  **2 0 M J 8 2 2 8**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Cory gustafson, HSI

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Cory Gustafson, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **1/15/2020**

_____
*Judge's signature*

City and state: El Centro, CA

Hon. Ruth Bermudez Montenegro, US Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Samsung Cellular Telephone
> SIM Card #: TM9263
> Seized as FP&F No. 2020250300013801
> ("Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, 2051 North Waterman Ave. El Centro, CA 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 4, 2019** through **December 4, 2019**:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, Special Agent Cory Gustafson, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

Black Samsung Cellular Telephone

SIM Card #: TM9263

Seized as FP&F No. 2020250300013801

("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, as further described in Attachment B.

2.    The requested warrant relates to the investigation of Christopher VASQUEZ ("VASQUEZ") for importation of methamphetamine and heroin from Mexico into the United States. The Target Device is currently in the evidence vault located at 2051 N. Waterman Ave, Suite 100, El Centro, CA 92243.

3.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

4.    I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so

1

employed since July 2017. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge ("ASAC"), in El Centro, California. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between U.S. Drug Enforcement Administration and ICE.

5.     Prior to my employment with HSI, I was a sworn police officer with the El Centro Police Department since January 2011. I was assigned as a Task Force Officer (TFO) with the HSI Border Enforcement Security Task Force from December 2013 until October 2014. I was then assigned as a TFO with the Drug Enforcement Administration (DEA) Major Mexican Traffickers (MMT) from October 2014 until July 2017. My relevant training and experience also includes training at the Federal Law Enforcement Training Center in Glynco, Georgia. Before and after graduating from the Training Center, I have participated in and conducted investigations of violations of various state and federal criminal laws. These investigations resulted in the arrests of individuals who imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine.

6.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a.   Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b.   Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c.   Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

f. Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain

3

electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## FACTS SUPPORTING PROBABLE CAUSE

9.    On December 3, 2019, at approximately 5:45 p.m., Christopher VASQUEZ (VASQUEZ ) applied for entry into the United States through the Calexico, California, West Port of Entry. VASQUEZ was the driver, sole occupant and registered owner of a grey 2005 Nissan Sentra. In vehicle primary, VASQUEZ made two negative customs declarations.    A CBP officer referred VASQUEZ to secondary inspection for further inspection.

10.    During the vehicle secondary inspection, CBP officers searched VASQUEZ's vehicle and located a small black zippered pouch. The pouch contained a green leafy substance as well as a white crystal-like substance.    The white crystal-like substance weighed 1.91 grams and tested positive for the characteristics of methamphetamine. CBP officers also conducted a search of VASQUEZ's person. During the search, officers located a hard, round object near VASQUEZ's upper right thigh area. After VASQUEZ retrieved the object from his pants, officers seized a clear plastic baggie that contained 51.71 grams of a tar-like substance, which tested positive for the characteristics of heroin. VASQUEZ was placed under arrest.

4

1    11.    Post-arrest, VASQUEZ was advised of and waived his *Miranda* rights and
2  agreed to answer questions without a lawyer present. VASQUEZ admitted to ownership of
3  the drugs but claimed they were for his "personal use." VASQUEZ estimated there were
4  only a "couple of grams" of heroin and a "little bit" of methamphetamine. VASQUEZ
5  explained that he has used drugs for "ten plus years" and stated he uses a syringe to inject
6  both drugs intravenously. VASQUEZ admitted that he knew it was illegal to bring drugs
7  from Mexico into the United States. Moreover, when asked by agents, VASQUEZ admitted
8  that the cellphone located in his vehicle, the Target Device, belonged to him. Agents asked
9  VASQUEZ for consent to search the phone to which VASQUEZ replied: "Turn it off."
10  Agents seized the Target Device incident to VASQUEZ's arrest.

11    12.    Based upon my experience and investigation in this case, I believe that
12  VASQUEZ, as well as other persons, were involved in an ongoing conspiracy to import
13  methamphetamine, heroin, or some other federally controlled substances into the United
14  States. Based on my experience investigating narcotics smugglers, I also believe that
15  VASQUEZ may have used the Target Device to coordinate with co-conspirators regarding
16  the importation of federally controlled substances into the United States. Accordingly, based
17  upon my experience and training, consultation with other law enforcement officers
18  experienced in narcotics trafficking investigations, and all the facts and opinions set forth
19  in this affidavit, I believe that information relevant to the narcotics trafficking activities of
20  VASQUEZ, such as telephone numbers, made and received calls, contact names, electronic
21  mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos, and
22  other digital information are stored in the memory of the Target Device.

23    13.    In my training and experience, narcotics traffickers may be involved in the
24  planning and coordination of a drug smuggling event in the days and weeks prior to an
25  event. Co-conspirators are also often unaware of a defendant's arrest and will continue to
26  attempt to communicate with a defendant after their arrest to determine the whereabouts of
27  the narcotics. Based on my training and experience, it is also not unusual for individuals,
28  such as Defendant, to attempt to minimize the amount of time they were involved in their

1  smuggling activities, and for the individuals to be involved for weeks and months longer
2  than they claim. Accordingly, I request permission to search the Target Device for data for
3  data beginning on September 4, 2019, up to and including December 4, 2019, which was
4  the day after Christopher VASQUEZ'S arrest.

5                                      **METHODOLOGY**

6         14.    It is not possible to determine, merely by knowing the cellular telephone's
7  make, model and serial number, the nature and types of services to which the device is
8  subscribed and the nature of the data stored on the device. Cellular devices today can be
9  simple cellular telephones and text message devices, can include cameras, can serve as
10 personal digital assistants and have functions such as calendars and full address books and
11 can be mini-computers allowing for electronic mail services, web services and rudimentary
12 word processing. An increasing number of cellular service providers now allow for their
13 subscribers to access their device over the internet and remotely destroy all of the data
14 contained on the device. For that reason, the device may only be powered in a secure
15 environment or, if possible, started in "flight mode" which disables access to the network.
16 Unlike typical computers, many cellular telephones do not have hard drives or hard drive
17 equivalents and store information in volatile memory within the device or in memory cards
18 inserted into the device. Current technology provides some solutions for acquiring some of
19 the data stored in some cellular telephone models using forensic hardware and software.
20 Even if some of the stored information on the device may be acquired forensically, not all
21 of the data subject to seizure may be so acquired. For devices that are not subject to forensic
22 data acquisition or that have potentially relevant data stored that is not subject to such
23 acquisition, the examiner must inspect the device manually and record the process and the
24 results using digital photography. This process is time and labor intensive and may take
25 weeks or longer.

26        15.    Following the issuance of this warrant, I will collect the subject cellular
27 telephone and subject it to analysis. All forensic analysis of the data contained within the
28

                                          6

1 telephone and its memory cards will employ search protocols directed exclusively to the
2 identification and extraction of data within the scope of this warrant.

3     16.    Based on the foregoing, identifying and extracting data subject to seizure
4 pursuant to this warrant may require a range of data analysis techniques, including manual
5 review, and, consequently, may take weeks or months. The personnel conducting the
6 identification and extraction of data will complete the analysis within 90 days, absent
7 further application to this court.

8 **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

9     17.    VASQUEZ declined Agents' request for consent to search the Target Device.
10 Otherwise, law enforcement has not previously attempted to obtain the evidence sought by
11 this warrant.

12 **CONCLUSION**

13     18.    Based on the facts and information set forth above, there is probable cause to
14 believe that a search of the Target Device will yield evidence of Christopher VASQUEZ's
15 violations of Title 21, United States Code, Sections 952, 960 and 963.

16     19.    Because the Target Device was seized at the time of Defendant's arrest and
17 have been securely stored since that time, there is probable cause to believe that such
18 evidence continues to exist on the Target Device.  As stated above, I believe that the
19 appropriate date range for this search is from September 4, 2019 to December 4, 2019.

20

21

22

23

24

25

26

27

28

20.     Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Cory Gustafson
Homeland Security Investigations

Subscribed and sworn to before me this ___ /5ᵗʰ ___ day of January, 2020.

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

8

# **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Samsung Cellular Telephone
> SIM Card #: TM9263
> Seized as FP&F No. 2020250300013801
> ("Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, 2051 North Waterman Ave. El Centro, CA 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 4, 2019** through **December 4, 2019**:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

d.   tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject phone; or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.**